Mr. Fisher? Good morning, Your Honors. May it please the Court, counsel. I'm representing the defendant in this case, Ernest Coffey. Mr. Coffey was convicted in a bench trial of two counts of first-degree murder. Specifically, the judge found that on July 29, 2008, the defendant choked and stabbed Jessica Wesson to death, knowing that his conduct was likely to result in death or great bodily harm, and while acting with intent to kill. The defendant was sentenced for intentional murder to the maximum term of 60 years imprisonment. Three issues are raised on appeal. In the first issue, the defendant maintains that the trial judge did not adequately address his post-trial claims of ineffective assistance of counsel. He therefore asked this Court in issue one to remand this cause for a new hearing on his claims, consistent with Illinois case law such as People v. Baltimore and People v. Moore. Alternatively, in issue two, Mr. Coffey asked this Court to remand this cause for a new sentencing hearing, at which he is allowed to represent himself. And as a final alternative in issue three, he argues that his sentence of 60 years in prison, the maximum in this case, was excessive based on his youth, the fact that he was in foster care from the age of six months, his history of mental problems, his history of employment, and the support of various individuals who wrote letters on his behalf at sentencing, and he therefore asked this Court as a final alternative to reduce the sentence. Now, the State asked for an argument today, so I imagine counsel may wish to address particular issues. I intend to focus my argument this morning on issue one, involving the request for a Baltimore hearing and a remand. Now, almost as soon as the judge announced his guilty verdicts in this case, the defendant began writing letters to the judge, complaining about the guilty verdicts, but complaining primarily about the representation by his trial attorney and the attorney's failure to present certain evidence of trial that would have bolstered the defense and undermined the prosecution. Now, the defendant wrote so many letters to the judge that at one point the judge actually entered an order asking the defendant to stop inundating the court with his written communications. Nonetheless, the judge did hold a hearing, and he allowed the defendant to voice his complaints. The defendant submits that he did not adequately address those complaints according to the proceedings mandated in cases such as Baltimore and more. Now, at a Baltimore hearing, of course, the judge is supposed to make a preliminary determination as to whether the defendant's complaints simply argue about trial strategy, which is not actionable as ineffective assistance of counsel, or whether those complaints suggest neglect by counsel, which can, of course, rise to the level of ineffective assistance. Case law allows the judge, even encourages the judge where necessary, to question the defendant to clarify his claims and to question defense counsel about the defendant's claims. And, of course, ultimately the issue for the judge is whether to appoint independent counsel to represent the defendant on his assertions of ineffective assistance. Now, admittedly, some of Mr. Coffey's arguments simply went to trial strategy, and some of his arguments were inconsistent with the record or otherwise frivolous, but some of his claims did suggest neglect by counsel for failure to present certain evidence at trial. First and foremost, the defendant asserted that the trial judge at trial never heard evidence that the murder was committed in the course of an assault perpetrated against the victim and the defendant by the defendant's jealous girlfriend. Now, the judge did hear evidence at trial that the defendant had a longstanding relationship with a woman named Dakesha Robertson, that during the course of that relationship, he also had a sexual affair with the victim, Jessica Wesson. And further, the judge heard that Robertson knew Wesson and found out about the affair shortly prior to the murder. But the judge did not hear evidence that the defendant and the victim were assaulted by Robertson and her friends in retaliation for the defendant carrying on this affair. Nor did the judge hear evidence that the defendant claimed existed, that he himself was stabbed in the course of that assault. And he further alleged that there was a videotaped statement that was not presented at trial from one of his roommates that would have supported this claim, that this was an assault carried out and directed by his girlfriend, Robertson. In addition, the defendant asserted that there was evidence that should have been presented at trial but was not presented at trial, that he did not possess or have access to an automobile at the time of the offense. Now, this would have been important for two different reasons. First of all, his girlfriend, Robertson, testified at trial that she witnessed the murder, that she witnessed the defendant commit the murder, and that afterwards, he drove her home in his automobile. Now, clearly, if he didn't have access to a car, that would have challenged her credibility that she witnessed the defendant commit the offense. Furthermore, a couple of the defendant's roommates testified as prosecution witnesses that the day after the murders, the defendant had his car detailed or cleaned, and the prosecution argued this was circumstantial evidence that he was trying to get rid of evidence in his car that might have linked him to the murder. Again, if he didn't possess a car at that point in time, that would have undercut the credibility of these witnesses and prevented the state from making that circumstantial evidence argument. Wasn't the vehicle that everyone's talking about, it belonged to Ms. Robertson's family or a family member? There was some talk that at one point it belonged to a family member. The defendant acknowledged at one point possessing the car and driving the car, but among his post-trial claims, he asserted that that car was actually sold or transferred, in fact, to his roommates at some point prior to the murder in this case. And so he claimed he did not have possession at the time of the murder. He also alleged post-trial that his roommates who testified for the prosecution committed perjury and received some sort of financial remuneration in exchange for that perjury, and this was not mentioned at trial either. Now, the State on Appeal notes correctly that the defendant did not expressly state that he had shared all of this information with counsel prior to or during trial. But the defendant believes that's at least implicit in his claims and is consistent with his assertions that counsel failed to present his evidence at trial and refused his request to enlist the services of an investigator. In any event, this is a question that could have easily been cleared up by the judge at the hearing below. Judge could have asked the defendant, did you share this information with counsel? Judge could have questioned counsel. Did the defendant tell you about this? Judge did not ask any follow-up questions of the defendant and did not require counsel to respond substantively to any of the defendant's assertions. In addition, the defendant made a claim post-trial that at some point during proceedings in the trial court, his attorney called him a nigger, and the defendant is African American. Now, such a claim, of course, doesn't fall under the category of either strategy or neglect, but it's such a serious, shocking contention that if true, would suggest this attorney should not have been representing this defendant, and it's something the judge should have asked the parties about, but the judge failed to do so. Now, as I've mentioned, the judge did allow the defendant to voice his complaints,  he asked one question of counsel, but it was a very broad, open-ended question, asking whether counsel had any input, and counsel's only response was that he still felt willing and able to continue to represent the defendant, to represent him on a post-trial motion that counsel had filed, and to represent him at sentencing if it got that far, but counsel offered no response substantively to any of the defendant's assertions, and this is why the defendant submits that he just did not receive a proper hearing in accordance with cases such as Baltimore and Moore. Now, the judge, interestingly, did cite a case guiding his consideration of the defendant's claims, but that case did not involve post-trial claims of ineffective assistance, it involved pre-trial claims of ineffective assistance, a public court decision called People v. Wanky, and, of course, the issue there is whether new counsel should be appointed to represent the defendant at trial, very different from the question confronting the judge at a Baltimore hearing. On top of that, one of the factors the judge cited in refusing to appoint new counsel was his belief that this would only delay the proceedings. Well, the defendant submits a delay as simply part and parcel of the situation that must confront the judge where a defendant makes post-trial claims of ineffective assistance. A Baltimore hearing is going to entail some delay. If the judge sees fit to appoint new counsel to represent the defendant on his claims, that's going to involve further delay, but I think it's clear that the courts have determined that that delay is outweighed by the defendant's right to a fair trial and to effective assistance of counsel. On the other hand, in the pre-trial situation, as was involved in Wanky, delay there could be a proper consideration because I think there the judge needs to consider, among other things, the timing of the defendant's assertions to decide are they dilatory. And so looking at everything that happened here at the hearing below, I think we have a situation that although this is a very experienced trial judge, he simply failed to address the claims in the manner dictated by Illinois case law. And for these reasons, Mr. Coffey respectfully asks your honors to remain on this cause for a further hearing in conjunction with the procedures set forth in cases such as Baltimore and more. Thank you. Thank you, your honors. Ms. Kelly. May it please the court, counsel. The people asked that this court consider the issue raised in the entire context of this case. This was a defendant who was a very prolific pro se litigator. He asked for counsel, of course, had counsel appointed as soon as he was charged with the offense and then shortly thereafter started filing numerous post-trial motions. This matter was addressed by the court many times. The first time, a lot of the post-trial motions, excuse me, a lot of the pro se motions he was filing were motions that attorney Rose declined to adopt. And the defendant thought that he might then prefer to go pro se. That was addressed on two or three successive court dates. And then the defendant was given the opportunity to talk to the public defender of Peoria County and express his concerns, and he did. And then they came back into court, and the defendant stated that he was willing to continue with Mr. Rose as his attorney. The case proceeded. The defendant then in the spring started filing more pro se motions, both pledging ineffective assistance of Mr. Rose and that he wanted to fire Mr. Rose, that he had his own investigator, and that he had several motions he wanted to file. He once again asked the court to proceed pro se, and the court gave him the full admonitions, as the court had done the previous time. And on this occasion, the court allowed the defendant to proceed pro se, and Mr. Rose was allowed to withdraw. The defendant filed his pro se motions. The defendant then went to a hearing on a pro se motion to suppress, and that did not go well. And the next day he asked to resign from being his own lawyer and has to have counsel reappointed, and counsel was reappointed. A new counsel, Counsel Sheets, was appointed. And things were going okay until it came close to trial, at which point the defendant again started filing numerous post-trial, pre-trial motions, excuse me, pro se, other motions that he wanted heard that counsel would not adopt, and additionally motions that he fired Mr. Sheets. Mr. Sheets also filed a new motion to caution, suppress, which was heard and denied, and the case then was ready for jury trial. The defendant asked on the day of jury trial to proceed pro se. The court went over the procedural history of the case and declined to allow him to go pro se. During voir dire, the defendant waived his right to a jury trial, and the next day the case proceeded to a bench trial. After the conviction, the defendant started filing his pro se motions again, which are the subject of what we're here for today. As counsel pointed out, there were so many pro se motions that the judge finally admonished him in court that he could no longer file them with the court, and anything filed with the court would just be placed in an envelope marked pro se filings, and he was to discuss this with counsel. The case was then called for hearing on the defendant's pro se post-trial motions in early December, and the defendant was asked to tell the court what his concerns were. The defendant had filed numerous motions covering over 100 pages in the record, and so it was surely difficult for the trial judge to follow and to find out what was really important to the defendant, and the people have summarized in their brief what the defendant did argue at that time. The judge listened to those arguments. They mostly concerned evidence that was admitted at trial, evidence that should have been admitted at trial. They were mostly trial issues. He complained about his attorney not presenting his evidence the way he wanted, which is that he had prepared affidavits of his testimony. He wanted the attorney to present that as his testimony. These were the concerns that he shared with the trial judge. As the people have stated in their brief, these do not raise to the level of showing neglect of case, nor did he ever say that he had shared these concerns with counsel, this evidence that he had, the fact that he felt that witnesses were perjuring themselves. The people dispute that the defendant's claim in his brief and on appeal, that this was implicit in what he was telling the judge. He had the opportunity. He was allowed to speak for quite a while and did speak for quite a while. He never told the judge that he had addressed any of these concerns with his counsel. So when the judge was ruling, he was ruling on the remarks made in court, and he did consider the remarks made by the defendant, and he found that they did not rise to the level of neglect. Counsel is correct in that he turned to defense counsel and did not ask him directly about individual claims, just asked him a single question to which counsel responded that he was willing to continue to represent him, and the judge denied the post-trial motion. Then a few days later when the case was called for sentencing, the defendant was able to address the matter again. He had some concerns. He wanted his motions and certifications heard. The judge gave him the opportunity. Again, there was nothing rising to the level of necessity to appoint new counsel for a further Baltimore hearing. It's the people's position that the trial judge was aware of the correct standard while he did cite the Wanky case, which was about pretrial claims of ineffective assistance of counsel. At the time he did so, our Supreme Court had not yet told us that those could not, were not to be considered under the same standards as a Baltimore hearing. The judge knew what he was looking for, felt that the defendant had not raised his claims to that level, and properly denied the motion for ineffective assistance of counsel at the post-trial motion stage. The people submit that the hearing was adequate, that there's no need to remand for a further Baltimore hearing, and that the trans-convictions and sentence should be affirmed. Thank you, Ms. Scott. Thank you. Mr. Fisher, any rebuttal? Thank you, Your Honors. Just very briefly, two quick points. Counsel began talking about the context and the history of the case and the motions filed by the defendant even pretrial, request to go pro se, the fact he was pro se at one point pretrial. Of course, all of that is on the record, and counsel summarizes it accurately. The fact that an individual may be a quote-unquote difficult client or may try the patience of a judge does not preclude the judge or does not allow the judge to short circuit the process. He must still accord defendant's claims the appropriate procedure, and defendant submits the judge failed to do that here. Secondly, with respect to counsel's statement, which I referenced earlier, that the defendant did not explicitly say that he shared this information with counsel prior to trial, that he wanted to be actually presented at trial. Again, the defendant asserts it's implicit, but again, even if it wasn't, that could have been cleared up very quickly below. It could have been cleared up by trial counsel. Trial counsel could have said, you know, judge, unfortunately my client didn't tell me this is all news to me, or if in fact that was the case. Alternatively, counsel didn't want to say anything, the judge could have specifically asked the defendant, did you tell counsel about this? Could have asked counsel, did he share this with you? This is one of the reasons, I think, why Illinois case law allows and even encourages where it may be necessary the judge to question the parties. He's not limited to just what the defendant has to say. And so in summary, the defendant simply did not receive a full and proper hearing on his claims, and he once again respectfully seeks a remand for that purpose. Thank you. And thank you both for your argument today. We will take this matter under advisement.